Jeffrey A. Lovitky, the Appellant v. Donald J. Trump in his official capacity as President of the United States Mr. Lovitky, the Appellant, Mr. Glover, the Appellant I was waiting for them to figure out Thank you so much for your patience. Your Honor, my pleasure. May it please the Court, I am unaware of any case in this judicial circuit or in any other judicial circuit that holds that a federal court's mandamus jurisdiction is withdrawn unless there is a specific statute expressly stripping the court of its jurisdiction. Moreover, in this case, the Attorney General's enforcement authorities under the Ethics in Government Act are limited to situations in which there is a willful or knowing nondisclosure. And in this case, there is no willful or knowing nondisclosure. And as such, the Attorney General's authority in this case is essentially inapplicable. With respect to the standing issue, I think that NTEU remains valid, controlling authority in this judicial circuit. I just want to be clear on one thing. You're not asserting any statutory cause of action other than the mandamus? Yes, on the Mandamus Act. You concede you don't have any other cause of action other than coming to this issue through the Mandamus Act? Yes. With respect, Your Honor, to the issue of the disclosure of deaths, in this case it seems evident that in this case there was no full and open disclosure or full and complete disclosure. But do you dispute that they were all disclosed? Your concern is that other things were disclosed too,  Well, it makes it impossible to identify. I didn't read you anywhere as disputing that in fact all of the personal liabilities were disclosed. I am not disputing the fact that there were personal liabilities that the President has that were not listed on the financial disclosure statement. You're not raising that? No. My dispute is that to me a disclosure means to make clear. And in this case, it is entirely unclear from the President's financial disclosure statement whether or not he is liable for these debts. And as such, there is no disclosure, let alone a full and complete disclosure. All right. I had thought you had argued in your brief that they're all there. He just needs to go through with asterisks and identify which is which. Yes. Okay. So they're all there. You just want asterisks. Well, Your Honor, I don't know that they're all there. I'm not challenging. Okay. Right. As far as you know, you're not claiming that he shorted you on disclosing or that the form shorted you on disclosing all of the debts. It's just that it's the formatting. Well, I don't want to quibble. Presentation. I don't want to go into much of it. It's sort of the presentation of it. I don't want to quibble with semantics too much, but in my opinion there was no disclosure of personal debts because I don't know which of the debts listed in the financial disclosure statements are personal. What in the statute entitles you to police the accuracy of his disclosure as opposed to get a copy of such report filed? I don't believe, Your Honor, Congress went through the entire purpose of these financial disclosure statements is essentially to give information to the public, not to agency ethics officials. I mean, that's important. Really? I don't know. I can't decide that. Maybe it's both. All right. Fair enough. Maybe it's both. But when you have a right to is such report under the section 105? Your Honor, I think it's just illogical to believe that Congress would have been. I'm just asking textually when you're asserting an informational injury here, right? Right. And so that's a creature of statute, your informational injury. Right. It wouldn't exist if Congress didn't say you get this information. Correct. And what Congress said is you get a copy of such report. With the information that's supposed to be in the report. It just says you get a copy of such report. Well, Your Honor. No, it's a difference. It's a difference. I don't see what the purpose is of giving somebody a blank piece of paper and saying, well, that complies with the public disclosure act. The question is whether it's an informational injury to say I got such report but I don't think its content complies with the law. That's a different argument than I didn't get such report. Fair enough. It is. Okay. But you need to show that you didn't get such report to have an informational injury, don't you? No. I don't think so. Tell me why. Because I think, Your Honor, that the statute provides that there's certain information. Not just giving a copy of whatever is thrown together in a report. That doesn't serve the public disclosure provisions of the statute at all. How do I know that? Because Congress didn't say you're entitled to get a copy of report that's in full compliance with every jot and tittle of the statute. It said you're entitled to get such report, and such report refers to the filed report. Well, I think Congress is fairly specific as to exactly what is supposed to be in these reports. That's what's supposed to be in the report. Right. And it also said who polices that issue. I'm sorry. I didn't hear. It also says who polices whether there wasn't enough stuff in the report. And it's not you. Well, in this case, Your Honor, I would suggest to you that the agency, whoever is policing it doesn't have authority to waive the requirements of the statute, number one. Number two, the policing... That may be, but I don't know that you have standing to bring a lawsuit that says they haven't been enforcing the Ethics in Government Act. Well, I have standing. Well, Your Honor, my... You have standing to get such report, which you did. Well, I think I have an informational injury here, Your Honor. I need the information for voting purposes. That's standing enough. You only get what Congress authorized you to get, correct? And Congress authorized... I just want to be crystal clear that you agree that you get... We're fighting now about what Congress authorized, but you would agree that an informational injury is something created by... This one, at least, is created by statute. And so your informational injury is to get what Congress authorized you to get. Right. And we'll just debate whether they authorized. Right, exactly. And what Congress authorized me... You're not claiming a right to get anything more than what Congress authorized. No. What Congress authorized me to get was a report which contains certain information. That's what Congress authorizes. That's what Congress requires. But I think your argument goes a step further, doesn't it? You're saying the whole purpose of the statute in terms of disclosing personal liabilities was so an informed person who gets the report can determine whether or not there's a potential or an actual conflict of interest. Yes, Your Honor. And if it's all mixed together and say the President's liabilities are $500, but the corporate liabilities are $5 billion, that doesn't tell you anything. That's correct. You can't figure out which is which. That's correct. It doesn't tell you anything. So my point is that's if you knew that, but you don't know whether it's $500 or much more. That's your argument. But I didn't see that in the statute, all right, that prohibiting what has happened here. I didn't see that in the specific language of the statute. Yes, Your Honor. And you make that statement twice in your brief, but you don't give me a citation that shows that. No, Your Honor. I am not asserting that the President is prohibited from disclosing as much as he wants. I mean, maybe it should even be encouraged. I don't know. That is not the case. It's not the issue here is not what is prohibited. The issue here is what is expressly required. I understand. But if Congress said report everything, and you say, but if he does that, I can't figure out potential or actual conflicts of interest. Except, Your Honor, Congress didn't say report everything. Congress said report personal liabilities in excess of $10,000. Yes. What if it said report at least personal liabilities? At a minimum, you must report personal liabilities. If you want to report more, you can. Fair enough. You can report as much as you want. Then you would have no case. Then you would have no case. I'm sorry? You would have no case under that statute, a statute that says you must disclose at a bare minimum his personal liabilities, as you talk about the statute doing. And if the statute then added a sentence that said, if you want to disclose more, you may. If that's what the statute? Just to be clear. I'm just saying assume that hypothetical statute. Then you would not have this argument. I think that's fair. I think that's right. I think that's right. In other words, I am not saying that the statute prohibits him from reporting more than is required. I think that's true. And I think that he, but under the way the statute is currently structured, the President has a certain obligation to advise the public of what are his personal liabilities in excess of $10,000. And that didn't happen here. The material in the appendix that's been filed on page 174 has a list of all the debts. Is that correct? I'd have to look at 174. I don't know what year this is. 174. Right. That's for a year. I believe that's for a year of 2019. Okay. Now, these other attachments here, were they filed with the report, the actual loan documents? No. Where did they come from? I did my own research. You got these loan documents not from the financial report but from other sources? Right. I did my own research to get these documents. Well, when you did that research, didn't you find that you could identify which was a corporate loan? Not really. Simply by the loan documents. I've looked through them. If it's an LLC that's taking the loan out, then we know it's a corporate document, a corporate loan. Fair enough, Your Honor, but the problem is we don't have the loan documents underlying which these mortgages secure. In other words, I got copies of the mortgage documents but not the loan documents, which are secured by the mortgages. So unless you have the loan documents, it's impossible to discern exactly to what extent the President is liable for any of these loans. What would be in addition to the mortgage? If it's listed, you know, I looked up a number of these, but 1094 South Ocean Boulevard mortgage, right, and the loan documents are there. In that case, it is there. That's true. But with respect to the corporate debts, the loan documents are separate debts, are separate documents from the mortgage documents. Yeah, but if it's listed as Trump Park Avenue LLC mortgage, we know that's not a personal loan. No. That's not correct, Your Honor, because the loan documents may have provisions requiring unconditional guarantees from the President under which— The theory bothers me, the validity of it, which is that we have to separate out the personal loans because that will reveal potential conflicts of interest, which is what you told Judge Rogers, right? But the same is true if you've got a closely held—these are not public companies—a closely held corporation. If Donald Trump is the only shareholder and he's got $10 million at stake with Deutsche Bank for a particular—for Trump Doral, the same argument, namely that we have to know that in order to prevent conflicts of interest applies, doesn't it? Good point, and there's two responses, Your Honor. First, number one, not all of the loan documents are—the loans are to entities. Some of those loans are to entities which aren't disclosed as assets on the financial disclosure statement. I mean, for example, there's a loan to TIHT Chicago. You will not find on the financial disclosure statement an entity called TIHT Chicago. You'll find something kind of sounds like that, but I have no way of knowing whether it's the same. Who in the executive branch polices these particular disclosure requirements? Your Honor, they are reviewed by agency, White House Ethics Council, and again by the OGE Ethics Council, but the point is this— Is it OPM? No, OGE, Office of Government Ethics. Okay. We have—judges have a similar obligation. It's policed by the Administrative Office of U.S. Courts. Correct. But did you file a complaint with that particular agency? No, Your Honor. Actually, to begin with, when this case started, I sent a letter to the White House Council advising them of my concerns, in addition to which the OGE, Office of Government Ethics, there is no complaint procedure for a member of the public to file complaints with the Office of Government Ethics. No such procedure exists. There's no regulations, no guidance, and it just doesn't exist. You're not barred from doing that, are you? I'm sorry, Your Honor? You're not barred from doing that, are you? Not barred, no. But the second point I would make in response to your question, Your Honor, is that with respect to the issue of— we know in many of these cases, you're right, these are closely held financial corporations, and in some cases the President does have a financial interest in them, but still we don't know the extent to which the President's financial interest exists, whereas if it's personal liability, we know the President's potentially liable for the whole amount of the loan. He's potentially liable for the entire amount of the loan, even in a closely held corporation, if he appears to the corporate veil. Fair enough. He could be. But the point is, Your Honor, remember in this case we're still in a motion-to-dismiss stage for the litigation, and we haven't had a chance yet to get into the facts and the meat of what the President is liable for, what he's not liable for. The questions I'm asking don't go to that so much as to the question whether there's some clear duty on the part of the President that he failed to satisfy. I understand, Your Honor. And the President's clear duty is to let the public know which liability, any personal liabilities, advise the public of any personal liabilities of him, his spouse, or independent child in excess of $10,000. Thank you. Thank you. Thank you, Your Honor. Good morning. Good morning, and may it please the Court. I'm Matthew Glover, and I represent the President of the United States. I think as the discussion with my friend, Mr. Levicky, evinces, there are a raft of issues with his claim, not least of which is the statute doesn't provide him a clear and indisputable right for the relief he seeks, which is to have the President put an asterisk next to personal and non-personal liabilities in his ethics form, and nor does the statute impose a duty on the President to do so, to add those asterisks, nor does it limit you to only disclosing certain things. I think we pointed in our brief to a few places where the statute says you need not list something or you are not required to list something, and it doesn't say, but if you do, here's what you need to do for those procedures. I'd be happy to touch. Do you agree he has informational standing? I don't see you raising it. No, we didn't raise that in this court. We argued that below, and the district court viewed Friends of Animals v. Jewel and those two cases in this court saying if on your reading of the statute I think there is a line to that effect. We cited some contrary precedent below. We didn't prevail, and we think we have a lot of strong arguments. Obviously we can't concede standing by not arguing it, but I'm happy if you have questions to sort of let you know what we argued below, but I hesitate to make it at the podium. I'm just curious, and maybe it's a difficult question. It's just usually informational injuries. Nobody can claim under FOIA that I ask for the report, they get the report, and they go, wow, you all didn't fill out the report properly. So I still have an informational injury. No one would allow that under FOIA, right, if they get whatever the government has. Yes. And the statute, at least as I read it, and maybe I'm all wrong, says they get such report, the one that's filed, and that's their informational right, but it's not a right to go, oh, I've got it, hand it back and go do it over, you didn't do it right. I agree, Your Honor, and we had argued below relying on some cases dealing with the FEC that in that statutory scheme, the court had held, or I believe it was this court, it may have been some district courts, had held there was no informational injury when what you are asking for the statute didn't produce, but the district court here read the line, friends of animals versus jewel. What about Zivotofsky? Zivotofsky held that if government gives an individual a right to receive particular information and the individual doesn't get that information, that that's sufficient for standing under Article III. Your Honor, yeah, I suppose that would conflict with our informational injury arguments below. Again, we didn't raise those on appeal because we... And specifically mentioned FOIA cases as an example of that. Also government in the Sunshine case. Yeah, again, we didn't address that on appeal, and I don't think we relied on Zivotofsky below, at least to my memory, and we didn't prevail. We do think there are other problems, jurisdictional and authority or judicial authority problems with the case. It's agreed by all that there's no other statutory cause of action at issue here. This is just all mandamus. There's nothing in the Office of Government Ethics Act or anything. No, Your Honor. The Office of Government or the Ethics Act, as I call it, the Ethics in Government Act of 1978, points out in Provision 105, as you described with my colleague, that the custody has to be held by OGE under 105A. They need to make things available for you to view there. And then under 105B, if you follow certain procedures, which there's no dispute Mr. Levick, he followed, you're entitled to receive the report, and there's also no dispute he received it. Again, I would emphasize, and I think that some of the questions to Mr. Levick emphasize this, the statute has a procedure for enforcement by the Attorney General in 104. It has a procedure for review in 106. It has built-in mechanisms, and it doesn't contemplate personal duty to receive anything other than the completed report or it doesn't contemplate. You heard counsel say why he's not urging anything that the Attorney General would have authority to proceed on. But to the extent there's an internal procedure, it doesn't exist. There are no regulations. There's no nothing. I'm sorry. You heard what he said. Yeah. So I took him to say that the Attorney General's 104 authority is that you can bring a civil enforcement. No, no. He said he's not making a claim that there was any willfulness involved, and that's what the Attorney General's authority is limited to. All right? Yes. So then you look for the administrative review, and he said there are no procedures. Well, the Office of Government Ethics has imposed procedures on itself in terms of reporting. For the president, it does go to the director of the office himself. No, no, counsel. He gets the report. Yes. He thinks it fails to conform to the statute. So the argument is, well, you ought to proceed, seek review by the Office of Government Ethics. But he says there's no procedure for that. That's true, Your Honor, and that's because the statute isn't contemplating individuals being involved in reviewing and asking for changes to reports. So if I get a report and it's just gibberish, I can't ask the Office of Government Ethics to look that over and see whether they, in its view, this report is satisfactory. That's all I'm getting. There's no motion procedure for reconsideration. Correct, Your Honor. There's no formal procedure. I would note, and I think this is noted at least in the briefing in Mazars, I believe it's in the opinion that there has been an entity that has written a letter to the Office of Government Ethics saying, you know, we think this father's report was not complete. So he just wrote to the wrong person. He wrote White House counsel. He should have written to the head of the Office of Government Ethics. Given that there's no procedure, the Office of Government Ethics isn't under an obligation to respond to that. He came into this court and he needs to show that there's a clear right to relief and that the President had a clear duty to do what he's asking for to asterisk the liabilities. I understand that. I was just trying to understand the process. So the review is by the Office of Government Ethics, that's it? And that's it? Unless you show mandamus. Yes, if I can just, depending on the filer, typically you have an initial review with the ethics officer for your specific office and then to the Office of Government Ethics. No, but that's all internal. He's talking about the end result. He gets such report. Yes. He's stuck with it. Yes. Unless he can show he's entitled to mandamus. Yes, Your Honor. Your point is he can't show that. Yes. Well, what if someone filed this report, a hypothetical, not this case, somebody who really wanted to hide some things. And so they put their personal liability in there and then voluntarily included the liabilities of every liability this person has, every liability a family member has, every liability friends have. And so it went on hundreds and hundreds and hundreds of pages, resulting in completely obscuring what the statute requires to be disclosed. Would that violate a clear duty? And in my hypothetical, it's done willfully, which is not alleged here at all. If it were done willfully and they larded this thing up so that it's unreadable, would that violate a clear statutory duty? It would violate Section 104 says it would. Let me step back. I apologize. It would violate Section 102A4, which requires you to state your liabilities. If you're doing this willfully and you . . . In my hypothetical, they have stated the liabilities. They've just stated a lot of other liabilities. Your Honor . . . Too obscure. That might be a closer case. No, no. I'm just trying to ask whether that would violate a duty under the statute or not because I thought your theory was there's nothing in the statute that prevents adding in everybody in the room's debts. There's nothing in the statute that limits you to solely the liabilities that are required to be disclosed under 102A4. And so . . . So it wouldn't be a harder case in your view, then? It may be a case for the ethics officer to inquire and say, are you willfully violating this and are you trying to . . . I mean, they willfully did. They can't willfully violate if the statute doesn't forbid it, can they? I think the statute envisions a process in which if you produce . . . I think your hypothetical said hundreds, but maybe you said dozens of pages. We'll say hundreds, that's fine. Hundreds of pages that your ethics officer might sit down with you and say, this seems odd to me. Can we go through and discuss each of these liabilities? I'm looking at your assets. I don't see a ton of . . . Or maybe you gave hundreds of pages of both. But the statute . . . No, the person just says, no, nothing forbids me from disclosing more, so I disclose more. There would still be no right for Mr. Levitky to ask that filer to change their report. Well, my question is whether that would be a clear violation of the statute. I don't think it would be a clear violation of the statute on its face, because it does not prohibit you from listing additional liabilities. But I think that's far afield from where we are here. And that would, you know, the ethics office, if it raised a red flag with them, would discuss it with you. I see that I'm over time. I was thinking about previous presidents. And they either put their assets in a blind trust or something like that. And so when the disclosure form came, it was very limited as to what needed to be disclosed that was still a personal liability. This president has taken, according to what I read in the press, and that's all I know, he's taken a different attitude toward continuing involvement in various corporate activities. And so his disclosure might be necessarily more detailed, lengthy. And I guess the way I was reading this was, there's nothing that prevents him from doing what Judge Millett just described. Although the statute, when it was passed, and as it's been applied for a number of years, has focused on the president's individual personal liabilities. And so this disclosure may be a little different, but there's nothing in the plain text of the statute that prevents the type of fulsome disclosure that occurred here. Yes, I would agree, Your Honor. And if I could just qualify briefly. Section 102F regards when you have a blind trust. And so when you have a blind trust, you're not required to disclose all of those assets. That's my point. Yes, you could. The president has disclosed under 102A1 for his assets and 2 and A4 for the liabilities. So, yes, Your Honor. If there are no further questions, we would ask the court to affirm the district court. Thank you. I just have two points briefly I'd like to make. One, on informational standing, with respect to standing and informational injury cases, it's quite clear that standing should be based on the appellant's interpretation of the statute. That's number one. And the court just accepts that interpretation and presumes the merits in standing, with respect to standing. Second. I think we have an adverb in there somewhere, but I agree. Okay. Thank you. It has to be plausible or something like that. Something like that. Secondly, I just would like to reiterate, Your Honor, that the president should not be allowed to bury his personal disclosure of his personal liabilities in a disclosure statement which contains a lot of information that he was not prohibited from disclosing. Correct. But when the disclosure itself, when the information he voluntarily discloses, obscures the information that he is required to report, he has fundamentally not complied with the statute. So you don't think that's an issue for Congress or the Office of Government Ethics to promulgate a regulation that clarifies that? You see, I think, Your Honor, it's clear from the statute. It's clear that the president has an unambiguous duty to disclose personal liabilities in excess of $10,000. And nothing more. Nothing more. That's all he's required. It doesn't say that. I'm sorry, Your Honor? It does not say that. Well, this regulation certainly says that he has an unambiguous, the filer's liabilities are what has to be. I understand. Thank you. May I ask you, before you sit down, you mentioned Congress. Do I recall correctly when I was reading the statute that I thought I saw a provision that permitted congressional committees to review the disclosures and then report back to the Office of Government Ethics if they had problems with it? Is that right? It doesn't exist with respect to the executive branch, Your Honor. That is, I think the disclosures forms you're referring to, those situations do come up, for example, when members of Congress do not make the disclosures they're required to make. In that case, the House Ethics Committee or the Senate Ethics Committee is required in that case to take the issue and look at it and resolve it. But with respect to the executive branch disclosures, it's all handled within the executive branch. And as I said in my briefs, there is no internal procedure in the executive branch to police the President's disclosures. A couple more little details. Are these reports, these financial reports, put online or do you have to make a specific request for them? These are put online, Your Honor. They're online? Yes, Your Honor. Okay. Thank you, Your Honor. Thank you. We'll take the case under advisory. Thank you.
judges: Rogers, Millett, Randolph